**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| NANCY MOULTON,<br><br>Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC., EQUIFAX INFORMATION SERVICES, LLC, TRANS UNION LLC, and FREEDOM MORTGAGE CORPORATION,<br><br>Defendants. | **Case No.: 1:26-cv-06821**<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>1. **FCRA, 15 U.S.C. § 1681, *et seq.*** |

Plaintiff Nancy Moulton ("Plaintiff") through counsel, alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.,* against Defendant Experian Information Solutions, Inc., ("Experian"), Equifax Information Services, LLC ("Equifax"), Trans Union LLC ("Trans Union") (collectively referenced as the "CRA Defendants"), and Freedom Mortgage Corporation ("Freedom Mortgage") (CRA Defendants and Freedom Mortgage collectively referenced as "Defendants").

## I. INTRODUCTION

1. Plaintiff's Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.,* by Equifax. Plaintiff contends the CRA Defendants failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer reports. "Consumer reports" under 15 U.S.C. § 1681a(d) include both credit file disclosures obtained directly by Plaintiff from the consumer reporting agencies and consumer reports obtained by third parties as a factor in establishing Plaintiff's eligibility for credit.

2. Plaintiff's Complaint also alleges that the CRA Defendants also violated 15 U.S.C. § 1681, *et seq.,* by failing to reasonably investigate Plaintiff's consumer dispute, which resulted in Equifax reporting inaccurate information about Plaintiff.

3. Plaintiff's Complaint also arises from violations of the FCRA by Defendant Freedom for failing to conduct a reasonable reinvestigation after receiving notice of Plaintiff's dispute from the CRA Defendants.

## II. JURISDICTION AND VENUE

4. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because Plaintiff alleges violations of the FCRA, a federal law. *See* 15 U.S.C. § 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

5. Venue in the Northern District of Illinois is proper pursuant to 28 U.S.C. § 1391 because Defendants regularly transact business within this District or are otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## III. PARTIES

6. Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

7. Plaintiff is a natural person who resides in Round Lake, Illinois.

8. Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

9. Defendant Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). On information and belief, Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Experian's principal place

of business is located at 475 Anton Boulevard, Costa Mesa, California 92626. Experian can be served at its registered agent, C T Corporation System, 330 North Brand Boulevard, Glendale, California 91203.

10. Defendant Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). On information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Equifax's principal place of business is located at 1550 Peachtree Street NW, Atlanta, GA 30309. Equifax can be served through its registered agent, Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

11. Defendant Trans Union is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). On information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Trans Union's principal place of business is located at 555 West Adams Street, Chicago, Illinois 60661. Trans Union can be served through its registered agent, Illinois Corporation Service Company, located at 801 Adlai Stevenson Drive, Springfield, IL 62703.

12. Defendant Equifax regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Equifax regularly furnishes consumer reports to third parties for monetary compensation, fees, and other dues, using means and facilities of interstate commerce, and is therefore a "consumer reporting agency" as defined by 15 U.S.C. §1681a(f) of the FCRA.

13. Defendant Freedom Mortgage is a "person" as that term is defined by 15 U.S.C § 1681a(b) and a "furnisher," as that term is used by the FCRA. Freedom Mortgage's principal place of business is located at 951 Yamato Road, Suite 175, Boca Raton, FL 33431. Freedom Mortgage can be served at its registered agent, CT Corporation System, located at 1200 S. Pine Island Road, Plantation, FL 33324

14. During all times pertinent to this Complaint, Defendants were authorized to conduct business in the State of Illinois and conducted business in the State of Illinois on a routine and systematic basis.

15. During all times pertinent to this Complaint, Defendants acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

16. Any violations by Defendants were not in good faith, were knowing, negligent, willful, and/or intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violations.

## IV. FACTUAL BACKGROUND

17. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

18. The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

19. Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

20. The FCRA is intended to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

21. Experian, Trans Union, and Equifax, the three major consumer reporting agencies (at times referred to collectively as "CRAs" and individually as a "CRA") in the United States, regularly publish and distribute credit information about Plaintiff and other consumers through the sale of consumer reports.

22. The CRA Defendants regularly obtain consumer bankruptcy information to include in consumer reports.

23. The CRA Defendants' consumer reports generally contain the following information: (i) Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) Tradeline Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) Public Record Information: this section typically includes public record information, such as bankruptcy filings; and (iv) Credit Inquiries: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

24. The CRA Defendants obtain consumer information from various sources. Some consumer information is sent directly to the CRA Defendants by furnishers, and other information

is independently gathered by the CRA Defendants from third party providers, vendors or repositories, like computerized reporting services like PACER and Lexis-Nexis.

25. The CRA Defendants regularly seek out and procure public record information, including consumer bankruptcy filing and discharge information, with the intention of including this bankruptcy information on the consumer reports it sells to third parties such as lenders.

26. The diligence the CRA Defendants exercise in uncovering and recording consumer bankruptcy filings is not replicated in their subsequent reporting of bankruptcy discharges and their effect on consumers' debts.

27. The CRA Defendants' unreasonable policies, procedures and/or algorithms consistently fail to identify and update pre-bankruptcy debts as required by § 1681e(b).

28. The CRA Defendants know the information they report about consumers' bankruptcies is often inconsistent with public records, furnished/reported information, and/or information contained in its own files.

29. The majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like the CRA Defendants) to make lending decisions.

30. Those institutions also use FICO Scores, and other proprietary third-party algorithms (or "scoring" models), including debt-to-income ratios, to interpret the information in the consumer's consumer report, which is based on the amount of reported debt, payment history, and date of delinquencies contained in Equifax's consumer reports.

31. The information the CRA Defendants include in a consumer report contributes to the consumer's overall creditworthiness and determines his or her FICO Scores.

32. FICO Scores are calculated using information contained in the CRA Defendants' consumer reports.

33. FICO and other third-party algorithms use variables or "attributes" derived from the consumer's consumer report to calculate a "credit score," which is a direct reflection of the consumer's creditworthiness.

34. FICO Scores factor the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

a. "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist. The more severe, recent, and frequent late payments are, the lower the consumer's FICO Score will be.

b. The "amount of debt" a consumer owes has a major impact on his or her credit score. When a CRA reports a debt as outstanding when it is in fact discharged, the CRA is indicating that the consumer's "amount of debt" is higher than it actually is, which will undoubtedly impact the consumer's credit score.

35. Lenders also consider a consumer's debt-to-income ratio ("DTI") before deciding to extend credit or approve financing terms.

36. DTI compares the total amount a consumer owes to the total amount the consumer earns.

37. A consumer's income, however, is not included in his or her consumer report, only his or her amount of debt is.

38. The higher the amount of reported debt that the consumer has, or appears to have, the worse the consumer's DTI will be, and the more difficult it will be for the consumer to obtain credit and favorable credit terms (e.g., higher interest and lower credit limits).

39. A consumer who has obtained a bankruptcy discharge and has an account reporting with outstanding or past due balances after the bankruptcy discharge suffers greater harm than if that account were accurately reporting with a zero-dollar balance.

40. The CRA Defendants are well aware that the effect of a Discharge Order in a Chapter 7 Bankruptcy is that all statutorily dischargeable debts, other than those that have been reaffirmed or successfully challenged in an adversary proceeding, are discharged.

41. However, the CRA Defendants also know that pre-petition debts are rarely reaffirmed or successfully challenged in an adversary proceeding.

42. Further, the CRA Defendants know that if reaffirmation agreements or adversary proceedings (successful or not) exist, they will be explicitly identified on an individual consumer's bankruptcy docket sheet.

43. Additionally, information indicating whether a specific debt was reaffirmed or successfully challenged through an adversary proceeding (rather than discharged) can be easily retrieved from the same sources from which Equifax independently obtains consumer bankruptcy case information.

44. The CRA Defendants also receive information about account reaffirmations or other discharge exceptions directly from furnishers of account/tradeline information.

45. Despite the availability of accurate consumer information, the CRA Defendants regularly report inaccurate information about accounts after consumers receive a Discharge Order.

46. The CRA Defendants regularly publish consumer information that conflicts with information provided by data furnishers to the CRA Defendants, already included in their credit files, contained in public records that they regularly access, or sourced through their independent and voluntary efforts.

47. The CRA Defendants routinely report inaccurate and materially misleading information about consumers like Plaintiff, without verifying or updating it as required by § 1681e(b).

48. The CRA Defendants knows the information they report about consumers' bankruptcies is often inconsistent with public records, information provided by furnishers, and data contained in their own files.

49. The CRA Defendants also know that failing to report the effect of a discharge on consumer account tradelines, while reflecting a bankruptcy on a credit report, would reasonably be understood to declare to the world that that the consumer had been in bankruptcy but had not received a discharge of a particular account. This not only inaccurately/incorrectly reflects an outstanding debt, but also would reasonably suggest to a consumer and those reviewing the consumer's credit report that the consumer was guilty of a bad act for which he did not deserve a discharge of a particular debt.[1]

---

[1] Indeed, a bankruptcy discharge is for the "honest but unfortunate debtor," *Grogan v. Garner*, 498 U.S. 279, 287 (1991), and will not be provided to someone who filed bankruptcy in bad faith, failed to report assets, fraudulently transferred assets, engaged in reprehensible pre-bankruptcy conduct such as fraud, defalcation or embezzlement, or caused willful and malicious injury. 11 U.S.C. §§ 727(a), 523(a).

50. Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints against the CRA Defendants for their inaccurate credit reporting following a Chapter 7 discharge.

51. Thus, the CRA Defendants are on continued notice of their inadequate post-bankruptcy reporting procedures. More specifically, the CRA Defendants are on continued notice that their inadequate procedures regularly result in the reporting of inaccurate balances, account statuses, payment histories, and payment statuses.

*Allegations Specific to Credit Reporting of Plaintiff*

52. In or around May 2014, Plaintiff and her then-husband finalized their divorce.

53. Following the divorce, Plaintiff and her ex-husband continued to jointly own and reside at their house, and were jointly liable for the mortgage, serviced by Wells Fargo and opened in or around April 2001.

54. Unfortunately, Plaintiff suffered a medical emergency, incurring large medical bills which she could not afford to repay, resulting in the need to declare bankruptcy.

55. Plaintiff filed a “no asset” Chapter 7 Bankruptcy on or about June 10, 2016, in the United States Bankruptcy Court for the Northern District of Illinois (Case No. 16-19152).

56. In her bankruptcy petition, Plaintiff listed the Wells Fargo mortgage account.

57. Plaintiff received an Order of Discharge on or about September 27, 2016.

58. Thereafter, Plaintiff was not personally liable for any of her dischargeable debts. Upon entry of Plaintiff’s Discharge Order, all of Plaintiff’s dischargeable debts had zero-dollar balances.

59. Shortly after Plaintiff's bankruptcy discharge, Plaintiff's ex-husband assumed full ownership of the property, and Plaintiff no longer had any ownership interest in the property, nor liability for the Wells Fargo mortgage account.

60. Some time after Plaintiff was removed from the Wells Fargo mortgage account, the mortgage was apparently assigned, transferred, and/or sold to Freedom Mortgage.

61. The CRA Defendants each prepared one or more consumer reports concerning Plaintiff after she was discharged from Chapter 7 Bankruptcy.

62. The CRA Defendants obtained notice of Plaintiff's bankruptcy discharge through its routine, independent collection of consumer information from third party vendors such as Lexis-Nexis, as well as from furnishers that provide data regarding the individual tradelines reported by the CRAs in Plaintiff's consumer reports.

63. In the Public Records section of Plaintiff's consumer report, the CRA Defendants included the bankruptcy case number, court, filing date, and the fact that Plaintiff's bankruptcy had been discharged.

64. The CRA Defendants also reported Plaintiff's credit history in individual "tradelines," including names of credit accounts, account numbers, account types, responsibility for the account (i.e., individual or joint accounts), the date the accounts were opened, statuses, and the dates of the last status update.

65. The CRA Defendants are aware that they are generally required to report accounts included in a consumer's Chapter 7 bankruptcy with a status of "discharged through bankruptcy," and/or with a zero-dollar balance, unless a furnisher provides information showing that a specific debt was excluded from the discharge.

66. The CRA Defendants should have reported **all** of Plaintiff's dischargeable, pre-petition debt as included in or discharged in Chapter 7 Bankruptcy, and/or with a zero-dollar balance.

67. The CRA Defendants failed to report **all** of Plaintiff's dischargeable, pre-petition debts as included in or discharged in Chapter 7 bankruptcy with a zero-dollar balance.

68. The CRA Defendants each inaccurately reported Plaintiff's Freedom Mortgage account (the "Mortgage Account"), starting with 16571**** and opened in April 2001, which pre-dated Plaintiff's bankruptcy filing.

69. Any liability Plaintiff owed under the Mortgage Account was discharged on or about September 27, 2025. Therefore, the Mortgage Account should have been reported as discharged in bankruptcy, and/or with a zero-dollar balance.

70. Alternatively, the Mortgage Account should not be reporting on Plaintiff's credit report at all, as Plaintiff's ex-husband assumed total liability for the Mortgage Account prior to the Mortgage Account's assignment/sale/transfer from Wells Fargo to Freedom Mortgage.

71. However, on or about August 26, 2025, Plaintiff observed that Trans Union inaccurately reported the Mortgage Account with a balance of $85,265.

72. Similarly, on or about September 6, 2025, Plaintiff observed that Equifax inaccurately reported the Mortgage Account with a balance of $85,265.

73. Similarly, on or about September 6, 2025, Plaintiff observed that Equifax inaccurately reported the Mortgage Account with a balance of $85,265.

74. The CRA Defendants did not indicate that the Mortgage Account was discharged in bankruptcy, despite reporting Plaintiff's bankruptcy in the Public Records section of Plaintiff's

consumer report and indicating that other pre-bankruptcy accounts were "Discharged/Included in Bankruptcy Chapter 7."

*Plaintiff's Disputes*

75. On or about October 28, 2025, Plaintiff mailed dispute letters to each of the CRA Defendants, specifically disputing the reporting of the Mortgage Account, and requesting the deletion of the account, as negative accounts – including accounts discharged in bankruptcy – are supposed to fall off a consumer's credit report after a seven-year period has elapsed, which it had in this case.

76. Plaintiff's dispute letters each further specifically advised that Plaintiff had filed for bankruptcy in June 2016, received a discharge in September 2016, and included Plaintiff's full bankruptcy case number, social security number, date of birth, phone number, and home address.

77. Upon information and belief, Equifax received Plaintiff's dispute.

78. Upon information and belief, Trans Union received Plaintiff's dispute.

79. Upon information and belief, Experian received Plaintiff's dispute.

80. Upon information and belief, Equifax forwarded Plaintiff's dispute to Freedom Mortgage within 5 business days of receipt.

81. Upon information and belief, Trans Union forwarded Plaintiff's dispute to Freedom Mortgage within 5 business days of receipt.

82. Upon information and belief, Experian forwarded Plaintiff's dispute to Freedom Mortgage within 5 business days of receipt.

83. Upon information and belief, Freedom Mortgage received Plaintiff's dispute.

84. On or about November 26, 2025, Equifax completed its investigation into

Plaintiff's dispute.

85. Equifax's dispute response, however, stated merely that "THIS ACCOUNT IS NOT CURRENTLY REPORTING INCLUDED IN BANKRUPTCY ON YOUR EQUIFAX CREDIT FILE. WE HAVE VERIFIED THAT THIS ITEM IS REPORTING CORRECTLY," and Equifax continued to inaccurately report the Mortgage Account on Plaintiff's report, and with a balance of $84,468.

86. On or about December 1, 2025, Experian completed its investigation into Plaintiff's dispute.

87. Experian's dispute response, however, stated merely that "The information you disputed has been verified as accurate," and Experian continued to inaccurately report the Mortgage Account on Plaintiff's report, and with a balance of $84,488.

88. On or about November 27, 2025, Trans Union completed its investigation into Plaintiff's dispute.

89. Trans Union's dispute response, however, stated merely that "The disputed item(s) was verified as accurate," and Trans Union continued to inaccurately report the Mortgage Account on Plaintiff's report, and with a balance of $84,488.

90. The CRA Defendants did not investigate Plaintiff's dispute, and pursuant to their unreasonable procedures, merely forwarded an automated dispute form to Freedom Mortgage, despite possessing independent information that indicated the Mortgage Account was discharged.

91. Although the CRA Defendants could have verified that the Mortgage Account was discharged through the same sources from which they receive consumer bankruptcy information, it neglected to do so.

92. Rather than perform an investigation of Plaintiff's dispute based on reasonably available public records and information known by them, the CRA Defendants merely parroted information furnished by Freedom Mortgage that indicated the Mortgage Account was not discharged in bankruptcy.

93. The CRA Defendants' failure to report the Mortgage Account accurately after receiving Plaintiff's dispute is particularly egregious because the CRA Defendants knew the information they reported was factually inaccurate and conflicted with information contained in their own records.

94. Freedom Mortgage failed to conduct a reasonable investigation after receiving notice of Plaintiff's disputes from the CRA Defendants. Freedom Mortgage failed, among other things, to review (or intentionally ignored) all relevant information regarding the dispute.

95. Consequently, Freedom Mortgage continued to furnish inaccurate data to the CRA Defendants despite possessing information from which it could have reported the Mortgage Account accurately. Freedom Mortgage's failure to provide the CRA Defendants with accurate account information is particularly egregious as Freedom Mortgage was notified of the inaccurate information through Plaintiff's dispute(s).

96. Defendants failed to indicate that the Mortgage Account was included/discharged in Chapter 7 Bankruptcy, or report the account with a zero-dollar balance.

97. Alternatively, Defendants failed to delete the Mortgage Account entirely from Plaintiff's credit file/credit report(s).

98. Defendants' reporting of the Mortgage Account is patently false/incorrect and therefore inaccurate.

99. If not patently false, Defendants' reporting of the Mortgage Account is materially misleading and therefore inaccurate.

100. Plaintiff specifically notified Defendants that her liability for the Mortgage Account was discharged, and should therefore be deleted from her report(s), but Defendants rejected this specific notice.

*Plaintiff's Damages*

101. Upon information and belief, had Defendants accurately reported the Mortgage Account with a zero balance, or deleted the Mortgage Account entirely, Plaintiff's credit scores and/or DTI would have been better.

102. Defendants' reporting of over $80,000 in debt that Plaintiff does not actually owe negatively increases DTI since the debt is substantially greater, but the income is unchanged.

103. The false increase debt also negatively impacts the 30% of credit score which is based on the debt owed divided by credit limits, which impacts post-discharge consumers even more than those who have not filed bankruptcy.

104. The inaccurate reporting by Defendants suggests to creditors that Plaintiff is guilty of a bad act and was not deserving of receiving a discharge of the Mortgage Account.

105. After Plaintiff's disputes, in or around March 2026, Plaintiff applied for credit with Capital One, but was denied due to Defendants' inaccurate reporting.

106. Defendants' inaccurate reporting of the Mortgage Account, along with additional information belonging to Plaintiff, was published to various creditors by the CRA Defendants during the process of Plaintiff's credit applications.

107. As a direct result of Defendants' inaccurate reporting, Plaintiff suffers damages, including a decreased credit score, lower overall creditworthiness, and other financial harm.

108. Plaintiff sustained actual monetary damages from the expense of certified mail tracking of Plaintiff's dispute to each of the CRA Defendants.

109. As a direct result of Defendants' inaccurate reporting, Plaintiff also suffers actual damages in the form of attorneys' fees incurred.

110. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, loss of sleep, humiliation, stress, anger, frustration, shock, embarrassment, reputational harm, and anxiety.

111. Defendants' conduct exacerbated Plaintiff's frustration during the already stressful post-bankruptcy period by hindering Plaintiff's ability to rebuild her credit.

## V. COUNT I

### Equifax's Violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681e(b), 1681(i)

112. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

113. The FCRA requires CRAs, like the CRA Defendants, to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information. 15 U.S.C. § 1681e(b).

114. In this case, the CRA Defendants negligently and willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of Plaintiff's credit information after Plaintiff received a Discharge Order.

115. The CRA Defendants independently sought information about Plaintiff's bankruptcy filing and discharge and voluntarily reported it in Plaintiff's consumer reports.

116. When the CRA Defendants procured and published Plaintiff's bankruptcy information, they had an obligation to follow reasonable procedures to report the bankruptcy discharge and its effect(s) with maximal accuracy.

117. These obligations are well established by the plain language of the FCRA, promulgated by the Federal Trade Commission, detailed in case law, and evidenced in prior cases involving the CRA Defendants from which it is on notice of its unreasonable procedures concerning the reporting of discharged debts.

118. The CRA Defendants knew or should have known that the effect of a Discharge Order in a no asset Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding.

119. The CRA Defendants knew or should have known of its obligations under the FCRA, especially pertaining to reporting discharged debt with a zero-dollar balance.

120. Additionally, the CRA Defendants possesses or could easily obtain substantial written materials that detail CRAs' duties and obligations under the FCRA, including those that apply when a consumer files for Chapter 7 Bankruptcy.

121. The CRA Defendants know that discharged debts should not be reported as late, past due, or with outstanding balances after the discharge date, and should be reported with a zero-dollar balance.

122. Yet the CRA Defendants inaccurately reported the Mortgage Account, which pre-dated Plaintiff's Chapter 7 Bankruptcy, with a balance owed and without any indication that the account was discharged in bankruptcy.

123. Despite knowledge of these legal obligations, the CRA Defendants willfully and consciously breached their duties under the FCRA. Accordingly, the CRA Defendants deprived Plaintiff of her rights under the FCRA.

124. The CRA Defendants had actual knowledge of Plaintiff's bankruptcy and Discharge Order, as evidenced by the information they published in Plaintiff's consumer reports, including the bankruptcy case number, court, date of filing and date of discharge.

125. Individual furnishers of account information also notified the CRA Defendants of Plaintiff's bankruptcy, as evidenced by tradelines in Plaintiff's consumer report that are labeled "discharged in bankruptcy" with zero-dollar balances.

126. The CRA Defendants violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's credit file and consumer reports, and by also failing to report accurate information when they knew or should have known the information they were reporting is inaccurate, or otherwise contradicted by information known by the CRA Defendants, reported to the CRA Defendants, or reasonably available to them.

127. Even after Plaintiff notified the CRA Defendants of the inaccurate information they included in Plaintiff's credit file, the CRA Defendants continued to inaccurately report the Mortgage Account with an outstanding balance.

128. The CRA Defendants' inaccurate reporting was particularly egregious because they have the ability to independently confirm that the Mortgage Account was discharged by reviewing its own records or accessing readily available public records.

129. The CRA Defendants therefore further failed to follow reasonable procedures, as 15 U.S.C. § 1681e(b) requires, by unreasonably relying on the furnisher, where, as here, the CRA Defendants possessed the information confirming that the Mortgage Account was discharged, including information concerning continued payments, and/or specific notice from Plaintiff.

130. In around 2009, the CRA Defendants each implemented their own automated software "bankruptcy scrub" following the settlement agreement in *White v. Experian Info. Sols., Inc.*, No. SACV 05-1070 DOC (MLGx), (C.D. Cal. 2008).

131. The CRA Defendants' bankruptcy scrub software identifies pre-petition accounts and makes assumptions about which accounts were discharged through the Chapter 7, even when the furnisher does not update the accounts as discharged.

132. In other words, the CRA Defendants' automated bankruptcy scrub assumes the CRA Defendants' notice of a Chapter 7 discharge is in fact notice that a consumer's pre-petition accounts may be reporting inaccurately, and the CRA Defendants will override data reported by a furnisher according to the CRA Defendants' assumptions and algorithms.

133. However, the CRA Defendants have intentionally chosen to disregard knowingly inaccurate open balances and payment obligations of certain types of pre-bankruptcy accounts in the CRA Defendants' software programming of their automated "bankruptcy scrub" they have been employing for well over a decade.

134. The CRA Defendants also failed to follow reasonable procedures, as 15 U.S.C. § 1681e(b) requires, by failing to verify that the Mortgage Account was discharged following Plaintiff's dispute(s), which information is reasonably available from the same sources the CRA Defendants procure consumer bankruptcy information.

135. The CRA Defendants' violations of 15 U.S.C. § 1681e(b) were willful.

136. Alternatively, the CRA Defendants' violations of 15 U.S.C. § 1681e(b) were negligent.

137. When a consumer disputes the accuracy or completeness of information included in a CRA's credit file, the FCRA requires the agency to either conduct a reasonable reinvestigation

into the disputed information **or** delete the disputed information from the consumer's credit file within thirty (30) days of receiving notice of the dispute. 15 U.S.C. § 1681i(a)(2)(A).

138. When conducting its reinvestigation of disputed information in a consumer report, the consumer reporting agency is required to "review and consider all relevant information submitted by the consumer."

139. Additionally, the CRA must notify the person who furnished the disputed information of the consumer's dispute within five business days of its receipt. When notifying the furnisher of the consumer's dispute, the CRA is to "include all relevant information regarding the dispute that the agency received from the consumer." 15 U.S.C. § 1681i(a)(2)(A).

140. Thus, in addition to violating the FCRA by failing to follow reasonable procedures as 15 U.S.C. § 1681e(b) requires, the CRA Defendants also violated the FCRA by failing to perform a reasonable reinvestigation of the Mortgage Account even after Plaintiff notified them of the inaccurate information in Plaintiff's credit file.

141. The CRA Defendants' violations of 15 U.S.C. § 1681i include, but are not limited to, the following:

(a) Failing to reasonably reinvestigate the inaccurate information Plaintiff disputed.

(b) Failing to consider all relevant information while investigating Plaintiff's dispute.

(c) Failing to include all relevant information when notifying Freedom Mortgage of Plaintiff's dispute.

142. Instead of reasonably reinvestigating Plaintiff's dispute, Equifax continued to report the Mortgage Account with an outstanding balance after Plaintiff's bankruptcy discharge.

143. The CRA Defendants' inaccurate reporting damaged Plaintiff's creditworthiness.

144. Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, credit denial, and other financial harm caused by the CRA Defendants inaccurately reporting a balance for a debt that was discharged in bankruptcy, and otherwise failing to report that the debt was discharged in bankruptcy.

145. Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, loss of sleep, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

146. The CRA Defendants are each a direct and proximate cause of Plaintiff's damages.

147. The CRA Defendants are each a substantial factor in Plaintiff's damages.

148. The CRA Defendants' acts, as described above, were done willfully and knowingly; or, alternatively, were committed negligently.

149. Therefore, the CRA Defendants are each liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681, *et seq*.

## VI. COUNT II
## Freedom Mortgage's Violations of the FCRA, 15 U.S.C. § 1681s-2(b)

150. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

151. The FCRA requires furnishers of information like Freedom Mortgage to conduct an investigation with respect to disputed information, review all relevant information, and report the results of the investigation to the consumer reporting agency. If the investigation reveals the information is incomplete or inaccurate, it must report those results to all consumer reporting agencies to which the furnisher has provided the inaccurate information.

152. Freedom Mortgage knew or should have known about its obligations under the FCRA. These obligations are well established in the plain language of the FCRA, promulgated by the Federal Trade Commission, and evidenced by case law. Freedom Mortgage obtained or had available substantial written materials that apprised it of its duties under the FCRA. Despite knowing these legal obligations, Freedom Mortgage acted consciously in breaching its known duties and deprived Plaintiff of her rights under the FCRA.

153. Plaintiff disputed the Freedom Mortgage tradeline through Equifax, Experian, and Trans Union.

154. Thereafter, Equifax, Experian and Trans Union each forwarded Plaintiff's dispute to Freedom Mortgage, notifying Freedom Mortgage that Plaintiff was disputing the information it had furnished about the Mortgage Account.

155. Freedom Mortgage received notice of Plaintiff's dispute and failed to reasonably investigate or otherwise take corrective measures despite possessing all relevant knowledge regarding the dispute.

156. Freedom Mortgage continues to furnish inaccurate information about Plaintiff to Equifax, even though Freedom Mortgage possessed all relevant information about the Mortgage Account and the inaccuracy that Plaintiff disputed.

157. The inaccurate Mortgage Account materially and adversely affects Plaintiff's credit standing.

158. On at least one occasion within the past two years, by example only and without limitations, Freedom Mortgage violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's disputes to the CRA Defendants.

159. Freedom Mortgage violated sections 15 U.S.C. §§ 1681n and 1681o of the FCRA by engaging in willful and negligent noncompliance of 15 U.S.C. § 1681s-2(a), (b), and engaging in conduct that violates 15 U.S.C. § 1681s-2(a), (b), including:

(a) Willfully and negligently failing to conduct an investigation of Plaintiff's dispute, despite possessing knowledge, information, and records to substantiate Plaintiff's dispute;

(b) Willfully and negligently failing to review all relevant information concerning Plaintiff's dispute;

(c) Willfully and negligently failing to report the results of investigations to the relevant consumer reporting agencies;

(d) Willfully and negligently failing to report to the CRAs that the disputed information is indeed inaccurate;

(e) Willfully and negligently failing to properly participate, investigate and comply with the reinvestigations that were conducted by any and all consumer reporting agencies concerning the inaccurate information disputed by Plaintiff;

(f) Willfully and negligently continuing to furnish and disseminate inaccurate credit, account and other information concerning the Plaintiff to the consumer reporting agencies despite actual knowledge of the falsity of the reported information; and

(g) Willfully and negligently failing to comply with the requirements for furnishers of information enumerated in 15 U.S.C. § 1681s-2(b).

160. Freedom Mortgage unreasonably refused to take corrective measures required by the FCRA to correct and/or update Plaintiff's consumer information furnished to Equifax.

161. Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, credit denial, and other financial harm caused by Freedom Mortgage's violative conduct.

162. Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, loss of sleep, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

163. Freedom Mortgage is a direct and proximate cause, as well as substantial factor in causing damage and harm to Plaintiff.

164. Consequently, Freedom Mortgage is liable to Plaintiff for the full amount of statutory, actual and punitive damages, as described herein and as allowable by law. Additionally, Plaintiff is entitled to Plaintiff's attorneys' fees and costs, as well as other such relief permitted by 15 U.S.C. § 1681n and § 1681o.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Defendants for the following:

(a) Declaratory judgment that the CRA Defendants violated the FCRA, 15 U.S.C. § 1681e(b) and § 1681i;

(b) Declaratory judgment that Freedom Mortgage violated the FCRA, 15 U.S.C. § 1681s-2(b);

(c) An award of actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

(d) An award of statutory damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

(e) An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C. § 1681n(a)(2);

(f) An award of costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) and § 1681o(a)(2); and

(g) Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

## VIII. JURY DEMAND

Plaintiff hereby demands jury trial on all issues so triable.

Respectfully submitted on June 9, 2026.

By: *<u>/s/Landon T. Maxwell</u>*
Landon T. Maxwell, AZ #038439
CONSUMER JUSTICE LAW FIRM PLC
8095 N. 85th Way
Scottsdale, AZ 85258
T: (480) 626-1975
F: (480) 613-7733
E: lmaxwell@consumerjustice.com

*Attorney for Plaintiff*
*Nancy Moulton*